# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO MAURI RODRIGUEZ,<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER, et al.,<br>Respondents. | Case No. 1:26-cv-05361-KES-SAB-HC<br>FINDINGS AND RECOMMENDATION TO GRANT FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS AND IMMEDIATELY RELEASE PETITIONER<br>(ECF No. 12) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is a citizen of Cuba who came to the United States in January 2014. He was subsequently convicted of several nonviolent crimes related to controlled substances, the last in 2019. After an immigration judge ordered him removed to Cuba, Respondents released Petitioner on an order of supervision in December 2019. Petitioner remained out of custody and in compliance with his order of supervision for the next six years. He had no further contact with law enforcement. (ECF No. 12 at 4.[1])

On March 26, 2026, Petitioner reported to a U.S. Immigration and Customs Enforcement ("ICE") office for his yearly routine check-in, as he had done over the previous six years. Upon

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

arriving and giving his check-in paperwork to an officer, he was taken to a room and informed that he was "going to Mexico." (ECF No. 12 at 4.)

A Notice of Revocation of Release form, dated March 26, 2026, indicates that ICE revoked Petitioner's release "pursuant to 8 C.F.R. § 241.4(l)" and "for the following reason(s): It is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal." (ECF No. 7-3 at 1.) Also selected is an entry stating that "ICE is seeking a travel document to effect your expeditious removal to Mexico." (Id.) That same day, an officer "conducted an initial informal interview of the detainee listed above in order to afford the alien an opportunity to respond to the reasons for revocation[.]" (Id. at 3.) Since Petitioner has been detained, ICE officers have visited Petitioner intermittently and asked him to go to Mexico voluntarily. Petitioner is not willing to go to Mexico and is afraid to go to Mexico. (ECF No. 12 at 5–6.)

On July 13, 2026, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On August 6, 2026, Respondents filed a response to the petition. (ECF no. 7.) On August 7, 2026, the Court appointed counsel for Petitioner. (ECF No. 9.) On September 4, 2026, Petitioner filed a first amended petition ("FAP"). (ECF No. 12.) On September 25, 2026, Respondents filed a response to the FAP, and Petitioner filed a reply on October 8, 2026. (ECF Nos. 13, 14.)

## II.

## DISCUSSION

### A. Zadvydas

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th

525, 529 (9th Cir. 2023). "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Avilez, 69 F.4th at 530–31. "After entry of a final removal order and during the 90–day removal period . . . aliens must be held in custody." Zadvydas v. Davis, 533 U.S. 678, 683 (2001) (citing 8 U.S.C. § 1231(a)(2)).

> A special statute authorizes further detention if the Government fails to remove the alien during those 90 days. It says:
>
> > "An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ...."

Zadvydas, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V)).

In Zadvydas v. Davis, two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under § 1231(a)(6). Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable "6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701. "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

"Respondent notes that Petitioner's sixth month in custody pursuant to *Zadvydas* falls tomorrow, September 26, 2026. Thus, while Petitioner's detention remains presumptively reasonable at the time of this writing (ECF 7), Respondents also argue that Petitioner's detention beyond six months does not en-title him to immediate release." (ECF No. 13 at 1.) "However, the burden-shifting framework from *Zadvydas* does not apply here" because "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*" but rather "ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Yan-Ling X. v. Lyons, 813 F. Supp. 3d 1157, 1163 (E.D. Cal. 2025) (alterations in original) (internal quotation marks omitted) (quoting Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025)). "[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired." Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

**B. Applicability of 8 U.S.C. § 1231(a)(1)(C)**

"[T]he removal period may be extended if the alien fails to make a timely application for travel documents or acts to prevent his removal." Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(C)). Respondents argue that the removal period is extended under 8 U.S.C. § 1231(a)(1)(C) because Petitioner refuses to cooperate with removal efforts to Mexico. (ECF No. 13 at 1–3.) "[T]his District routinely rejects such argument regarding 'failure to cooperate' with removal to a third country because there is no obligation for such cooperation." S.R. v. Warden of the California City Corr. Ctr., No. 1:26-CV-03587-TLN-CSK, 2026 WL 2676077, at *3 (E.D. Cal. Sept. 11, 2026) (collecting cases). See Obando Vargas v. Blanche, No. 1:26-CV-05343-DAD-AC (HC), 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026) ("[P]etitioner has no removal order to Mexico. Respondents' argument appears to be that, because petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may be detained indefinitely. This argument is frivolous and the court admonishes respondents' counsel to avoid wasting the court's time and resources with such

arguments in the future."); Dopico Pereira v. Warden of the California City Immigr. Processing Ctr., No. 1:26-CV-05007-NW, 2026 WL 2552737, at *2 (E.D. Cal. Aug. 30, 2026) (Argument "that Petitioner's refusal to consent to removal to Mexico has the effect of extending his removal period" "has been widely rejected throughout this circuit, and the Court does the same here."). Based on the foregoing, the Court recommends finding that 8 U.S.C. § 1231(a)(1)(C) is not applicable.

**C. Likelihood of Removal**

"The regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) apply to non-citizens in petitioner's situation and outline the process to be followed." Yan-Ling X., 813 F. Supp. 3d at 1163 (citing Nguyen, 788 F. Supp. 3d at 149; Escalante, 2025 WL 2206113, at *3). "A non-citizen subject to a final order of removal who is released on OSUP may be re-detained 'if, on account of changed circumstances, the Service determines [ ] there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.'" Huang v. Albarran, 818 F. Supp. 3d 1154, 1162 (E.D. Cal. 2026) (alteration in original) (quoting 8 C.F.R. § 241.13(i)(2)). "On numerous occasions, this Court has found that under 8 C.F.R. § 241.13(i)(2), when ICE revokes the release of a noncitizen who has been ordered removed to effectuate their removal, it is ICE's burden to show a significant likelihood of removal." Id. at 1160–61. "The phrase 'significant likelihood' requires something more than a mere possibility that removal will occur. Evidence that 'there is at least some possibility that' the designated country of removal 'will accept Petitioner at some point ... is not the same as a significant likelihood that [he] will be accepted in the reasonably foreseeable future.'" Yan-Ling X., 813 F. Supp. 3d at 1164 (quoting Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025)).

In Count One of the FAP, Petitioner asserts that his re-detention violates due process because Respondents re-detained him without any change in circumstances or legitimate justification. (ECF No. 12 at 19–20.) Respondents argue that "[w]hen non-cooperation is the only obstacle, removal remains reasonably foreseeable and deten-tion remains lawful." (ECF No. 13 at 2.) "As this Court and other judges in this District have pointed out, though DHS may have an informal arrangement with the Mexican government to allow third country removals to

Mexico, Mexico only accepts individuals who consent to be removed there." Pedro V.L. v. Warden, No. 1:26-CV-05261-JLT-EGC (HC), 2026 WL 2607611, at *1 (E.D. Cal. Sept. 3, 2026) (emphasis in original). Therefore, "removal based on the standing agreement between the United States and Mexico is not reasonably foreseeable when the noncitizen does not consent to the removal." Ramirez Outerino v. Warden, Mesa Verde ICE Processing Ctr., No. 1:26-CV-05326-DJC-JDP, 2026 WL 2327873, at *2 n.1 (E.D. Cal. Aug. 11, 2026). Here, Petitioner has refused consent to removal to Mexico multiple times. (ECF No. 12 at 5–6.) Accordingly, Respondents have failed to satisfy their burden that changed circumstances have made Petitioner's removal significantly likely in the reasonably foreseeable future.

> The record is devoid of any evidence suggesting Mexico will accept Petitioner in the absence of his consent, and Petitioner's repeated refusal to cooperate with his removal to Mexico evidences his non-consent. Therefore, even assuming the traditional burden shifting framework from *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001), applies, the facts here satisfy Petitioner's burden to show there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and Respondents fail to rebut that showing.

Pedro V.L., 2026 WL 2607611, at *1. Accordingly, the Court recommends finding that Petitioner is entitled to habeas relief on Count One and immediate release.[2] See B.D. v. U.S. Att'y Gen., No. 1:26-CV-05510-KES-EGC (HC), 2026 WL 2546626, at *1 (E.D. Cal. Aug. 28, 2026) (noting that "numerous district courts have held that when a petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may [not] be detained indefinitely" and ordering immediate release of petitioner where it "has been more than a year since petitioner was taken back into ICE custody, eight months since ICE tried to remove petitioner to Cuba, and seven months since ICE identified Mexico as a third country for petitioner's removal" (internal quotation marks and citation omitted)).

## III.

## RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The first amended petition for writ of habeas corpus (ECF No. 12) be GRANTED on Count One;

[2] In light of this conclusion, the Court declines to address Petitioner's other claims.

2. Petitioner be immediately released under the conditions of his most recent order of supervision; and
3. Respondents be enjoined from re-detaining Petitioner pursuant to 8 C.F.R. § 241.13(i)(2) unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 15, 2026**

STANLEY A. BOONE
United States Magistrate Judge